TRACY CARLISLE,

                Plaintiff,

v.

DAVID KALNINS et al.,

                Defendants.

_____/

Case No. 1:18-cv-191

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Kalnins, Kirkland, and Fenby for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon

County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Michigan. Plaintiff sues the following DRF officials: Correctional Officer David Kalnins; Prison Counselor Christopher M. Kirkland; and Deputy Warden David Fenby.

Plaintiff alleges that DRF Deputy Wardens David Fenby and Michelle Hill-Floyd issued a memorandum granting amnesty to DRF prisoners who placed contraband or excess items into the bin provided in the unit from 8:00 a.m. on April 20, 2017, through April 27, 2017. Inmates were advised that they must put the items into the designated bin in the unit. If they did so, no questions would be asked and no misconduct charges would be issued.

Plaintiff alleges that, on April 20, 2017, at 2:00 p.m., he attempted to take advantage of the amnesty. Plaintiff does not allege that he attempted to place his contraband into the bin. Instead, Plaintiff alleges that he attempted to turn over his contraband items to Defendant Kalnins under unspecified circumstances. Kalnins issued Plaintiff a minor-misconduct charge, alleging that Plaintiff was in possession of contraband. Three hours later, Plaintiff was transferred to a different housing unit.

Plaintiff reported to Defendant Kirkland on April 21, 2017, for a review of the misconduct ticket. Kirkland offered Plaintiff an opportunity to plead guilty of being in possession of contraband, in exchange for a sanction of five days' loss of privileges. Plaintiff refused. On April 25, 2017, Defendant Kirkland conducted a hearing, finding Plaintiff guilty of the misconduct charge and imposing a sanction of six days' loss of privileges.

Plaintiff appealed the misconduct conviction, contending that the amnesty period prevented him from being found guilty. Defendant Fenby affirmed the guilty finding, concluding

that the amnesty period did not prevent Plaintiff from being found guilty of having possession of contraband during the period.

According to Plaintiff, Defendant Kalnins permitted over 70 inmates, "mostly non-blacks," the opportunity to turn in contraband items. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that, by ticketing Plaintiff, an African-American, Defendant Kalnins discriminated against Plaintiff on the basis of his race.

Plaintiff also contends that the amnesty period provided him the right to immunity from sanctions for possessing contraband, and he suggests that issuance of and conviction on the misconduct ticket deprived him of due process. In addition, Plaintiff contends that the imposition of sanctions during the amnesty period amounted to cruel and unusual punishment, in violation of the Eighth Amendment.

For relief, Plaintiff seeks punitive damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Due Process

Plaintiff was charged with and convicted of a Class III misconduct for possession of contraband, and he was sanctioned with six days' loss of privileges. Plaintiff alleges that the temporary amnesty program adopted by the prison from April 20 to April 27, 2017, created a right to not be charged and convicted of a misconduct for possession of contraband during the period of amnesty. To the extent that Plaintiff alleges that Defendants violated state law or policy in charging him with a misconduct during the amnesty period, he fails to state a cognizable federal claim. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal

courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Moreover, Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

To the extent that Plaintiff alleges that his misconduct charge and conviction violated due process, he also fails to state a claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Under Michigan Department of Corrections Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See* MICH. DEP'T OF CORR. POLICY DIRECTIVE 03.03.105, ¶ AAAA. As a result, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class III misconduct conviction. His sanction therefore did not affect the duration of his sentence.

In addition, Plaintiff clearly has failed to suggest that his minor misconduct conviction resulted in an atypical and significant hardship. He alleges only that the conviction resulted in his loss of privileges for six days. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Plaintiff, therefore, fails to state a due process claim arising from his Class III misconduct charge and conviction.

## B.     Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin,

or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff alleges absolutely no facts constituting direct evidence of discriminatory motive or purpose in the issuance of the misconduct charge against Plaintiff. Moreover, he fails to allege a prima facie claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under the *McDonnell Douglas* test, a plaintiff must show that (1) he was a member of a protected class;

(2) he was qualified for the job; (3) he was subjected to an adverse decision; and (4) he was treated differently than similarly situated non-protected employees. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotations omitted). To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992).

Although he crafts his complaint to avoid directly stating the circumstances of his possession of the contraband, Plaintiff utterly fails to allege that he turned in his contraband in the manner indicated by the memorandum or in the same manner as other prisoners. Instead, he appears to contend that he had the right to turn in his contraband in any way he chose, rather than by placing his contraband into the bin provided. The misconduct report and findings indicate that Plaintiff was found in possession of the items, not that he had attempted to place them in the bin. (Attach. to Compl., ECF No. 1-1, PageID.12-13.) As a result, Plaintiff fails to allege that he "engaged in the same conduct without differentiating or mitigating circumstances." *Umani*, 432 F. App'x at 460.

Moreover, by his own allegations, Plaintiff alleges that 70 prisoners turned in contraband to Kalnins during the amnesty period (Compl., ECF No. 1, PageID.3), only approximately 50 of whom were white prisoners (*id.*, PageID.6). As a consequence, Kalnins treated both non-white and white prisoners differently than Plaintiff. Under such circumstances, Plaintiff falls short of alleging sufficient facts to support the fourth element of the prima facie case.

For both reasons, Plaintiff fails to state an equal protection claim.

### C.     Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff complains that he was subjected to six days' loss of privileges, a minor restraint that falls far short of implicating the concerns protected by the Eighth Amendment. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (minor and temporary inconveniences fail to state an Eighth Amendment claim); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in

administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).  Plaintiff therefore fails to state an Eighth Amendment claim.

### D.    Motion to Appoint Counsel

Plaintiff has requested a court-appointed attorney.  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).  In light of the Court's disposition of Plaintiff's complaint, his motion to appoint counsel will be denied as moot.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kalnins, Kirkland, and Fenby will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's motion to appoint counsel will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    March 14, 2018                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge